UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD THOMPSON,<br>　　　　Plaintiff,<br>　　v.<br>WILLIAM A. MASSARWEH, et al.,<br>　　　　Defendants. | Case No. 17-cv-05321-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br>Re: Dkt. Nos. 6, 10 |

On November 17, 2017, the Court heard argument on defendants' motion to dismiss under Rule 12(b)(6) (Dkt. Nos. 6, 10). For the reasons set forth below, the Court GRANTS defendants' motion to dismiss with prejudice.

**BACKGROUND**

Defendants William A. Massarweh and The Law Offices of William A. Massarweh have moved to dismiss plaintiff Richard Thompson's complaint alleging professional malpractice, breach of contract, breach of fiduciary duty, and negligence. MTD (Dkt. No. 10).

The following facts are drawn from the complaint, which the Court treats as true for the purposes of this motion. On March 29, 2002, plaintiff executed a premarital agreement with his then-fiancée, identifying plaintiff's premarital assets as separate property. Compl. ¶ 7 (Dkt. No. 1-1). After getting married in 2005, the couple hired defendants to prepare an estate plan. *Id.* ¶¶ 8-9. Plaintiff alleges that the estate plan, executed August 19, 2005, eliminated his separate property rights protected in the 2002 premarital agreement, and that defendant failed to (1) adequately inform the plaintiff of this result or (2) advise plaintiff to seek independent counsel. *Id.* ¶¶ 16-18. Plaintiff asserts that he would never have executed the 2005 documents had he known that they

would extinguish separate property rights in his premarital assets. *Id.* ¶ 24. The estate plan documents included: "Revocation of Premarital Agreement," which "explicitly revoked the 2002 Premarital Agreement" and eliminated separate property rights in all premarital assets; "Property Agreement," which converted all of the couple's property to community property without recognizing separate premarital property rights; "Assignment of Personal Property," which converted all of the couple's personal property to a living trust without recognizing separate premarital property rights; "Revocation of Joint Venture Agreement," which converted all of the couple's property to community property without recognizing separate premarital property rights[1]; and the "Thompson-Grace Living Trust," which transferred all of the couple's property into a living trust. *Id.* ¶¶ 11-15.

In 2008, the couple again met with the defendants to restate and amend the living trust. *Id.* ¶ 18. Plaintiff alleges that at this 2008 meeting, defendants again did not advise plaintiff to seek independent legal advice regarding the effect of the 2005 estate plan on his 2002 premarital agreement. *Id.*

Plaintiff's now ex-wife filed a Petition for Dissolution of Marriage in Contra Costa County in February 2015. *Id.* ¶ 19; Req. Jud. Not., Ex. 1 (Dkt. No. 17).[2] On October 8, 2015, the Contra Costa County Superior Court found that the Revocation of Premarital Agreement was a valid transmutation to community property of the separate property covered by the 2002 premarital agreement. Compl. ¶ 21. On April 11, 2016, after additional trial proceedings, the Superior Court entered an order affirming the binding validity of the revocation document on separate premarital

---

[1] The complaint titles this document "Revocation of Joint Venture Agreement." *Id.* ¶ 14. However, this document itself, which plaintiff attached to his opposition brief as exhibit A, is actually titled "Revocation of Premarital Agreement." Opp'n at 4. Hereafter in this order, it will be referred to as the Revocation of Premarital Agreement.

[2] Defendants request judicial notice of the state court docket and the October 8, 2015 state court order after hearing. Dkt. No. 17. Plaintiff has not objected to this request. The Court finds these documents are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2). The Court GRANTS defendants' request for judicial notice.

2

assets. *See id.* ¶ 22. On June 2, 2016,[3] the Superior Court ruled that the 2005 documents did not preserve any right of reimbursement for the plaintiff for his premarital property. Opp'n at 1-2 (Dkt. No. 14). The final judgment for dissolution of marriage was filed November 23, 2016; plaintiff filed an appeal of the order on reimbursement on November 29, 2016. Req. Jud. Not., Ex. 1. The state court appeal remains pending. *See id.*; Opp'n at 5.

Plaintiff initially filed this suit alleging professional malpractice on September 6, 2016, in Contra Costa County Superior Court. On September 13, 2017, defendants removed the case to federal court on the basis of diversity jurisdiction. Not. of Removal (Dkt. No. 1). Defendants' motion to dismiss came on for hearing on November 17, 2017. For the reasons set forth below, the Court GRANTS defendants' motion with prejudice.

## LEGAL STANDARD

### I. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

---

[3] The complaint and plaintiff's opposition variously list this date as June 2, July 2, and July 13, 2016. The state court docket, attached to the request for judicial notice, lists this date as June 2, 2016. For purposes of this motion, the difference between the June and July 2016 dates is not determinative.

3

However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id*. at 688-89.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## II. Cal. Civ. Proc. Code § 340.6

California Code of Civil Procedure Section 340.6, as amended in 2009, outlines the statute of limitations for all actions against attorneys for wrongful conduct in performing their profession, other than actual fraud. Cal. Civ. Proc. Code § 340.6(a). A claim arising out of such misconduct must be brought "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." *Id.* The statute thus puts limitations on the common law discovery rule, protecting the defendant from litigation brought long after the plaintiff gains actual or constructive knowledge. *See Samuels v. Mix*, 989 P.2d 701, 707 (Cal. 1999).

The statute allows for tolling, however, if "[t]he plaintiff has not sustained actual injury."

4

Cal. Civ. Proc. Code § 340.6(a)(1). The test for actual injury under section 340.6 is "whether the plaintiff has sustained any damages compensable in an action, other than one for actual fraud, against an attorney for a wrongful act or omission arising in the performance of professional services." *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1071 (Cal. 1998). Determining the timing of actual injury is generally a question of fact. *Adams v. Paul*, 904 P.2d 1205, 1208 (Cal. 1995). When the underlying facts are undisputed, however, the trial court may resolve the question as a matter of law, in accordance with the principles of summary judgment. *Id.* at 1211.

## DISCUSSION

Defendants argue that California Code of Civil Procedure Section 340.6 bars plaintiff's claims. MTD at 2. Defendants contend that the actual injury occurred in August 2005, when plaintiff executed the estate plan documents, and thus the statute of limitations bars claims brought after August 2009. *Id.* at 8. In their reply brief, defendants argue that plaintiff also allowed more than one year to pass between gaining knowledge of the injury and filing the lawsuit. Reply at 4 n.1 (Dkt. No. 16). Plaintiff states that, "In the underlying Dissolution of Marriage Action, [he] became aware, for the first time, that he had suffered 'actual injury' on July 2, 2016, . . . when the Family Law Court ruled for the first time that he could not assert any Family Code Section 2640 reimbursement claims for his premarital separate property assets because of the 2005 Revocation Document he signed."[4] Opp'n at 3.

### I.  Actual injury

Defendants argue that the "actual injury" occurred on August 19, 2005, when the plaintiff signed the estate plan documents. MTD at 11. Plaintiff argues that the date of actual injury is

---

[4] Family Code Section 2640 provides for a spouse to be reimbursed for separate property contributions to acquisitions of both (a) community property and (b) the other spouse's separate property during marriage unless there is a written waiver or a transmutation of the right to reimbursement. Cal. Fam. Code § 2640.

5

June 2 or July 2, 2016.[5] Opp'n at 1-3. In plaintiff's view, Family Code Section 2640 was not triggered until the filing of the dissolution of marriage proceedings, and June 2, 2016, was the first time he learned that the 2005 document barred his reimbursement claims and thus marks the time of actual injury. *Id.* at 2, 12. Defendants respond that plaintiff's argument concedes that the injury occurred in 2005. *See* Reply at 3.

Prior to the legislature's passage of Section 340.6, the California Supreme Court held that a cause of action for legal malpractice would not accrue until a plaintiff had suffered "appreciable" harm that was "irremediable." *Radovich v. Locke-Paddon*, 41 Cal. Rptr. 2d 573, 587 (Ct. App. 1995) (citing *Budd v. Nixen*, 491 P.2d 433 (Cal. 1971)). In enacting Section 340.6, the legislature implicitly rejected the "irremediable" requirement, instead focusing on injury that had, in fact, occurred. *See id.* (citing *Laird v. Blacker*, 828 P.2d 691, 693 (Cal. 1992)). Section 340.6 was intended as "legislative relief" for attorneys from the indefinite threat of litigation they could face with no limit on when a plaintiff could sue for discovering alleged malpractice. *Samuels*, 989 P.2d at 708. To that end, the statute, "even absent discovery, absolutely cuts off actions after a specified period ('four years from the date of the wrongful act or omission') . . . ." *Id.*

The statute of limitations on professional malpractice allows for tolling until "actual injury" occurs. Cal. Civ. Proc. Code § 340.6(a)(1). There are no bright-line rules about what constitutes an "actual injury"; each case should be determined in light of its facts and circumstances. *Foxborough v. Van Atta*, 31 Cal. Rptr. 2d 525, 529 (Ct. App. 1994). The California Supreme Court has rejected a categorical approach, specifically rejecting the theory that final adjudication on an issue is necessary in malpractice cases involving litigation. *Jordache*, 958 P.2d at 1070.

In *Hensley v. Caietti*, the California Court of Appeal found that actual injury occurred at the time of the stipulation to a marital settlement agreement, not at the later time a dissolution judgment was entered. 16 Cal. Rptr. 2d 837, 843 (Ct. App. 1993). The trial court had approved the settlement and declared that it was effective immediately. *Id.* The binding contract allocating

---

[5] *See* n.2, *supra*.

6

marital property "altered jural relations" and thus injured the plaintiff the moment it became enforceable. *Id.* The appellate court explained that "[n]egligent legal advice which induces a client to enter into a binding contract resolving marital property and support issues results in actual injury at the point of entry." *Id.*

Similarly, in *Turley v. Wooldridge*, the Court of Appeal found that Turley suffered "actual injury" when she executed a 1992 marriage settlement agreement that granted her less than half of her share in community property and provided for inadequate spousal support. 281 Cal. Rptr. 441, 445 (Ct. App. 1991). The Court of Appeal rejected Turley's argument that she suffered "actual injury" six months after the entry of final judgment of dissolution of marriage, when the injury became "irremediable." *Id.* at 443. Turley could have but did not pursue any legal or equitable remedies within the appropriate timeframe to challenge the agreement. *Id.* at 445. The execution of the agreement itself marked the injury, so the four-year statute of limitations barred her 1997 suit. *Id.*

Actual injury requires legally cognizable damages. *Jordache*, 958 P.2d at 1071. In *Jordache*, the California Supreme Court held that the plaintiff clothing company suffered actual injury by incurring costs defending litigation that insurance would have covered, but for the negligent advice of their attorney. *Id* at 1703. Jordache's attorney allegedly failed to provide timely notice to Jordache's insurers of a lawsuit filed against Jordache.[6] *Id.* at 1066-67. The attorney's negligence diminished Jordache's rights to liability insurance benefits, allowing the insurer to raise a "late notice" defense that increased Jordache's litigation costs. *Id.* at 1065. The California Supreme Court clarified that Jordache need not have waited until the settlement of its claims against the insurer to pursue a malpractice suit: "the determination of actual injury does not necessarily require some form of adjudication, judgment, or settlement." *Id.* at 1073. Jordache had already suffered losses before the end of litigation, and section 340.6 "will not toll the limitations period once the client can plead damages that could establish a cause of action for legal

---

[6] This was a negligent omission, not a negligent prediction of the outcome of adjudication. *Id.* at 1706; *cf. Sirott v. Latts*, 8 Cal. Rptr. 2d 206 (Ct. App. 1992) (finding malpractice where an attorney negligently advised his client that an insurance premium would be found unconstitutional).

malpractice." *Id.* at 1065. The timing of damages, rather than the end of litigation, was thus more determinative for finding "actual injury."

A plaintiff's discovery of the wrongdoing is not necessary to find actual injury. In *Radovich v. Locke-Patton*, the Court of Appeal concluded that actual injury occurred at the time the couple signed their 1957 prenuptial agreement, even though the husband only experienced the effects of the agreement upon his wife's death in 1991. 41 Cal. Rptr. 2d at 591. The plaintiff's community property interest "would have been of real and immediate benefit to Radovich '[t]hroughout the thirty-four years of the marriage,' and it follows that the agreement by which he ostensibly relinquished any community-property right . . . caused him immediate and actual injury throughout the same thirty-four years" and not just upon his wife's death. *Id.* at 590. The four-year statute of limitations is an "occurrence" period that applies regardless of when the plaintiff discovers the underlying facts. *Id.* at 585. The court need only assess plaintiff's discovery of the facts when applying the alternative one-year discovery period under Section 340.6. *Id.*

Here, all of plaintiff's claims stem from the execution of the 2005 estate plan documents. Those documents, according to plaintiff's own complaint, revoked the 2002 premarital agreement and converted his and his ex-wife's property into community property. *See* Compl. ¶¶ 11-14. At that time, plaintiff was deprived of his property rights, similar to the plaintiffs in *Hensley*, *Turley*, and *Radovich*, where the binding contract marked the point of actual injury for statute of limitations purposes.[7] *See* 16 Cal. Rptr. 2d 837; 281 Cal. Rptr. 441. At the moment plaintiff signed the 2005 estate plan documents, he could have brought suit for professional malpractice. *See Jordache*, 958 P.2d at 1065. This is true even if plaintiff only felt the monetary results of the alleged misconduct years later, when dissolution proceedings began. *See Radovich*, 41 Cal. Rptr. 2d at 590.

The Court therefore concludes that plaintiff's actual injury, for purposes of Section 340.6, occurred on August 19, 2005, when the parties executed the estate plan. Even if plaintiff did not

---

[7] At the hearing, plaintiff argued that this Court should not consider *Radovich* because that case was decided before the California Supreme Court's decision in *Jordache*. The Court finds that the approach taken by the *Radovich* court is consistent with the *Jordache* opinion and that, given the similarity in facts to those presented here, the *Radovich* opinion remains persuasive.

8

discover the actual injury until later, as he contends, the four-year limitations period "is indeed an occurrence period which will run *whether or not the plaintiff has discovered the malpractice*." *Id.* at 586 (emphasis added). Under California law, either the one-year or four-year limitations period applies to professional malpractice claims, "whichever occurs first." Cal. Civ. Proc. Code § 340.6(a).

Given the Court's determination on "actual injury," the four-year statute of limitations bars plaintiff from bringing this claim after August 19, 2009. Accordingly, the Court need not reach the parties' arguments regarding any one-year statute of limitations since, if applicable, that time period would close well after August 2009. *See* Opp'n at 5 (arguing that plaintiff first had knowledge of alleged misconduct in June 2016); Reply at 4 n.1 (arguing that plaintiff had knowledge during dissolution proceedings that begin in February 2015).

Because the underlying facts regarding when plaintiff signed the estate planning documents are undisputed, no amendment could cure the complaint's deficiency. The Court accordingly GRANTS the motion to dismiss with prejudice.

## II. Request to Stay Proceedings

Plaintiff alternatively seeks to stay these proceedings, pending the outcome of his appeal in state court. Opp'n at 3. The Court declines to stay this case. As the defendants rightly note, having found that the actual injury occurred in 2005, the statute of limitations bars plaintiff's claims. *See* Reply at 9. Only if this Court found that the determination of actual injury depended on the state court's final adjudication on the 2005 documents would a request to stay be relevant.

///

///

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss with prejudice.

**IT IS SO ORDERED**.

Dated: November 22, 2017

SUSAN ILLSTON
United States District Judge