UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD THOMPSON,<br>　　Plaintiff,<br>　v.<br>WILLIAM A. MASSARWEH, et al.,<br>　　Defendants. | Case No. 17-cv-05321-SI<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SANCTIONS**<br><br>RE: DKT. NO. 18 |

Defendants William A. Massarweh and The Law Offices of William A. Massarweh move for sanctions under Federal Rule of Civil Procedure 11 against plaintiff Richard Thompson and his attorney of record, Matthew M. Oliveri. Dkt. No. 18. The Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for December 15, 2017, pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the Court DENIES the motion, without prejudice to defendants' re-filing their sanctions motion in State Court.

**BACKGROUND**

The background of this case is summarized more completely in the Court's Order Granting Defendants' Motion to Dismiss. Dkt. No. 23. In brief, on March 29, 2002, plaintiff executed a premarital agreement with his then-fiancée, identifying plaintiff's premarital assets as separate property. Dkt. No. 1-1, Compl. ¶ 7. After getting married in 2005, the couple hired defendants to prepare an estate plan. *Id.* ¶¶ 8-9. Plaintiff alleges that the estate plan, executed August 19, 2005, eliminated his separate property rights protected in the 2002 premarital agreement, and that defendants failed to (1) adequately inform the plaintiff of this result or (2) advise plaintiff to seek independent counsel. *Id.* ¶¶ 16-18.

Plaintiff's now ex-wife filed a Petition for Dissolution of Marriage in Contra Costa County in February 2015. *Id.* ¶ 19; Dkt. No. 17, Req. Jud. Not., Ex. 1. In the dissolution proceedings, the Contra Costa County Superior Court found that the 2005 documents validly transmuted plaintiff's separate property to community property. Compl. ¶ 21. The Superior Court also ruled that the 2005 documents did not preserve any right of reimbursement for the plaintiff for his premarital separate property. *Id.* ¶ 23.

On September 6, 2016, plaintiff filed this suit alleging professional malpractice in Contra Costa County Superior Court. On September 13, 2017, defendants removed the case to federal court. Dkt. No. 1, Not. of Removal. On November 22, 2017, the Court dismissed the case with prejudice under Federal Rule of Civil Procedure 12(b)(6), finding that the statute of limitations on claims for professional malpractice, as set forth in California Code of Civil Procedure Section 340.6, barred plaintiff's claims. Dkt. No. 23.

Defendants now move for sanctions under Rule 11. Dkt. No. 18.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 11, a court may impose sanctions against an attorney, law firm, or party when a complaint is filed for an improper purpose such as harassment or delay, when the claims in the complaint are unwarranted under existing law or a nonfrivolous argument for extension of the law, or when the allegations in the complaint are without evidentiary support and are unlikely to have evidentiary support after further investigation and discovery. *See* Fed. R. Civ. P. 11(b)-(c). In the Ninth Circuit, a frivolous argument is one that is "legally or factually baseless" under an objective standard and made "without a reasonable and competent inquiry." *Q–Pharma, Inc. v. Andrew Jergens Co*., 360 F.3d 1295, 1299 (Fed. Cir. 2004) (citing *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th Cir. 2002)). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Mgmt. Co., Secs. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. A–C Co.,* 859 F.2d 1336, 1345 (9th Cir. 1988)).

**DISCUSSION**

Defendants argue that sanctions are warranted in this case for several reasons. First, they argue that the complaint was frivolous because it was barred by the statute of limitations. Dkt. No. 18, Not. of Mot. 1. They also argue that "there is ample evidence Plaintiff made statements during the underlying incident which prove there is no evidentiary support at all on which to advance the Complaint." *Id.* Third, they say that plaintiff's counsel misrepresented to the State Court "that there was effective service of the Complaint against Mr. Massarweh, and that the parties [were] engaged in settlement negotiations." *Id.* at 2. Defendants seek sanctions in the form of an order that plaintiff pay a penalty to this Court, an order to direct payment to defense counsel for fees and costs incurred in the filing of the Rule 11 motion (estimated to be $2,430), and terminating sanctions.[1] Defs.' MPA at 11.

The Court is not convinced that plaintiff's claims were "clearly time-barred," at least not so much so as to warrant the imposition of sanctions. *See id.* at 1. The California Supreme Court has stated that the question of whether and when to toll the statute of limitations in professional malpractice claims, and specifically regarding "when attorney error has caused actual injury under section 340.6, subdivision (a)(1), cannot depend on facile, 'bright line' rules." *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 764 (1998). Rather, "[t]he facts of each case must be examined in light of the specific attorney errors the plaintiff in each case alleges."[2] *Id.* at 763. This Court ultimately agreed with defendants that plaintiff's professional malpractice suit was untimely. *See* Dkt. No. 23. Nevertheless, the Court does not find that plaintiff's argument for why the statute of limitations should have been tolled was legally

---

[1] In their reply brief, defendants increased their estimate of the value of services rendered on the sanctions motion to $3,510 and further ask that the Court order payment of $38,122.10, as the amount incurred in "defending against Plaintiff's meritless claims from the outset of Plaintiff's filing of the Complaint in State Court . . . ." Dkt. No. 25-1, Decl. of V.T. Sathienmars ¶¶ 3-7.

[2] The Court of Appeal stated likewise in *Radovich v. Locke-Paddon*, on which defendants rely heavily. *See* 35 Cal. App. 4th 946, 971 (1995) ("The variety of situations in which [attorney] error can occur, and the injuries that can result, make it difficult to formulate and apply bright-line tests for 'actual injury' that resolve statute of limitations problems in all settings. . . . [T]he facts and circumstances of each case determine when the plaintiff suffered actual injury.") (citation omitted).

United States District Court
Northern District of California

baseless under existing California law. *See* Dkt No. 14.

The Court is more troubled about defendants' claim that plaintiff's counsel knew that there were no factual grounds to support the malpractice suit. In support of this argument, defendants have attached to their motion an email from July 2005 that purports to be from plaintiff to defendants, requesting that defendants assist plaintiff and his future wife in "eliminate[ing] any and all prior legal agreements" and "remov[ing] all separation of assets" as they prepare to get married. Dkt. No. 18-3, Decl. of Alex A. Graft, Ex. B. Defendants provided this email to plaintiff's counsel in October 2016 and, based on the communications that are before this Court, plaintiff's counsel did not respond for many months and did not provide a response to the substance of the exhibit at all. *See* Graft Decl. ¶¶ 4-5. At first glance, this would appear to be a clear example of a factually baseless claim that could subject plaintiff and his counsel to sanctions.

In opposition to the Rule 11 motion, however, plaintiff attaches the trial transcript from the State Court proceedings held to determine whether plaintiff's ex-wife exerted undue influence when plaintiff signed the 2005 documents revoking the premarital agreement. Dkt. No. 24-1. The transcript shows that this case is, at best, factually messy and, at worst, rife with bad acts on all sides. Among the evidence that cuts against defendants' assertion that there is no factual basis for a malpractice claim was plaintiff's testimony that he did not send the July 2005 email and that the style and wording of the email could not have been his.[3] *Id.* at 35:10-36:6. His ex-wife testified that she may have assisted plaintiff in drafting the July 2005 email. *Id.* at 68:19-69:3. Defendant William Massarweh also took the stand, testifying that he knew essentially nothing about the Revocation of Premarital Agreement that he drafted for the couple in 2005.[4] *Id.* at 101:21-103:20.

---

[3] Later testimony shows that plaintiff knew he was agreeing to give up his separate property when he and his ex-wife decided to get married in 2005. Dkt. No. 24-1 at 37:6-38:17. However, he also testified that he asked defendant to leave plaintiff's IRA and annuity as his separate property, and this apparently did not happen. *See id.* at 58:3-16.

[4] Defendant's testimony on this point reads:

Q: And although that document is titled Revocation of Premarital Agreement, in the third paragraph what does it say? Would you please read it for the Court?
A: "Now, therefore, pursuant to California law allowing married couples to recharacterize their assets at any time by mutual agreement during their marriage, we do hereby revoke in

4

In light of these discrepancies in the record, and particularly regarding whether the July 2005 email is what defendants assert it is, it is unclear that the filing of the complaint in this case rises to the level of sanctionable conduct. Ultimately, the majority of any problematic conduct, including the initial filing of the complaint, occurred in Contra Costa County Superior Court. Plaintiff filed his claim in September 2016 and defendants did not remove it to this Court until September 2017. Plaintiff's conduct before this Court amounts to opposing the motion to dismiss and opposing the Rule 11 motion.[5] The Court will not impose sanctions under the circumstances presented here.

This Court is of the opinion that the parties should not expend further resources on this case, whether by pursuing sanctions or otherwise. Defendants have succeeded on the merits by

---

its entirety the premarital agreement dated May 9, 2003 and I now hold the former assets contained in that premarital free and discharged of all the terms and provisions contained in such agreement and are no longer considered as separate property."

Q: And what kind of agreement would you call that? What's the type of agreement that is?
A: I have no idea.
Q: Is it a transmutation agreement?
A: I don't know. I have no opinion on that.
Q: Is it a community property agreement?
A: I don't know.
. . .
Q: Would you normally have clients transfer money between them in a document called Revocation of Premarital Agreement?
A: I have no idea.
Q: How many Revocations of Premarital Agreements do you draft in a year?
A: I have no idea.
Q: More than one?
A: I can't say.
Q: Before you drafted this agreement, had you ever drafted one like this before?
A: I don't recall.
Q: After this agreement, had you ever drafted one like this before?
A: I don't recall.

Dkt. No. 24-1 at 101:21-103:20.

[5] The Court recognizes that Rule 11 allows sanctions for frivolous filings made in State Court, if the party "later advocate[ed]" those filings by continuing to litigate the claim after removal to federal court. *See Buster v. Greisen*, 104 F.3d 1186, 1189-90 n.4 (9th Cir.), *abrogated on other grounds by Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011). However, the Court is not persuaded that this changes the analysis here or warrants the imposition of sanctions.

obtaining a dismissal of plaintiff's malpractice case with prejudice. However, because this case originated in State Court and the majority of the complained-of conduct occurred there, should defendants wish to pursue their sanctions motion in State Court, they may submit a proposed order to this Court seeking remand of the case for that limited purpose.

## CONCLUSION

Defendants' motion for sanctions is DENIED without prejudice to re-filing in State Court.

**IT IS SO ORDERED**.

Dated: December 11, 2017

SUSAN ILLSTON
United States District Judge